IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
MISSOULA DIVISION

| | |
|---|---|
| RONAN TELEPHONE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>VERIZON SELECT SERVICES, INC., MCI COMMUNICATIONS SERVICES, INC., WORLDCOM TECHNOLOGIES, INC.,<br><br>Defendants. | CV 16–06–M–DWM<br><br>OPINION<br>and ORDER |

    Ronan Telephone Co. ("Ronan") sued Verizon Select Services, Inc., MCI Communications Services, Inc., and Worldcom Technologies, Inc. (collectively "Verizon") for failure to pay access charges under federal and state tariffs. The case was transferred to another district court as part of a multi-district litigation proceeding, then remanded following that court's grant of Ronan's motion for summary judgment. (Doc. 6.) Verizon now seeks to amend its answer to add affirmative defenses and a counterclaim. (Doc. 16.) Ronan objects on the ground that Verizon has not shown good cause to amend the scheduling order as required by Rule 16 of the Federal Rules of Civil Procedure. Verizon argues that the more liberal Rule 15 standard should apply, but even so, that it has shown good cause to

1

amend. Here, Rule 16 applies, and Verizon meets the good cause standard of that rule. Verizon's motion to amend is granted.

## BACKGROUND

Ronan is a Montana-based local exchange carrier providing telecommunications services. (Doc. 1 at ¶¶ 1, 3.) This includes "access services," which allow long-distance telephone companies ("interexchange carriers") to route calls on their long-distance networks to and from customers of the local exchange carriers ("intraMTA calls"). (*Id.* ¶ 17.) Verizon is an interexchange carrier that relies on Ronan's facilities and services in exchange for payment of access tariffs filed with and approved by the Montana Public Services Commission and Federal Communications Commission ("FCC"). (*Id.* ¶¶ 1, 22–25.)

In January 2016, Ronan filed a Complaint to recover unpaid access charges from Verizon. (*Id.* ¶¶ 32–38.) The following month, the action was consolidated with other comparable claims and through the multi-district litigation process was transferred to the Northern District of Texas. (Doc. 17 at 4.) In July 2016, Verizon filed its Answer, which did not include a counterclaim but included four affirmative defenses. (Doc. 6-3 at 8–9.) Then in May 2018, the Texas district court determined that Verizon and other interexchange carriers used Ronan and other local exchange carriers' access services, which entitled plaintiffs to summary judgment on their claim for access charges. (Doc. 6-6 at 8.) In May 2020, that

decision was upheld by the Fifth Circuit Court of Appeals, after which Verizon paid Ronan $76,435—the amount it believed was owed to Ronan for the intraMTA dispute. (Doc. 17 at 4.)

As the multi-district litigation proceedings unfolded, a controversy arose over the minimum monthly charges in Ronan's access service tariff. Interexchange carriers claimed that Ronan was improperly billing based on a monthly threshold rather than actual call minutes. (*Id.* at 5.) Consequently, on March 28, 2016, Ronan filed a Petition for Declaratory Ruling before the Montana Public Services Commission to resolve the excess charge dispute. (*Id.* at 6.) The Commission held the tariff did not permit Ronan to bill minimum monthly charges for access services. (*Id.*)

In February 2021, after they were unable to reach an agreement on the judgment amount in the intraMTA action, Ronan and Verizon agreed to remand the case back to the District of Montana. (Doc. 6.) Upon receiving the parties' joint status report, (Doc. 11), a deadline of June 14, 2021 was set, for any motion for leave to amend the answer, (Doc. 15). Verizon subsequently filed a motion for leave to amend its answer and to add a counterclaim seeking relief for improper billing found by the Montana Public Services Commission. (Doc. 16.) The putative amended answer includes two affirmative defenses—satisfaction of

judgment and recoupment—as well as a counterclaim for breach of state tariffs. (Doc. 17-1 at 15–16.)

## ANALYSIS

Under Rule 15, parties are entitled amend pleadings once within 21 days of service. Beyond that, a party can only amend its pleading "with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(2). In principle, courts are encouraged to "give leave when justice so requires." *Id.* But, if a scheduling order has been entered, amendment of pleadings is then governed by Rule 16, which is not automatic but instead mandates a showing of good cause. Fed. R. Civ. P. 16(b)(4). Under such circumstances, only upon a finding of good cause to amend a pleading will the court then consider amendment under Rule 15's more liberal standard. *See C.F. ex rel. Farnan v. Capistrano Unified Sch. Dist.*, 654 F.3d 975, 984–85 (9th Cir. 2011); *see also Lindsay v. World Factory, Inc.*, 2015 WL 1246939, at *5 (D. Mont. Mar. 18, 2015); *Butler v. United Life Ins. Co.*, 2018 WL 10811782, at *3 (D. Mont. Dec. 3, 2018).

I.   **Rule 16**

   A.   **Application**

The threshold issue here is whether Rule 16—in addition to Rule 15—governs Verizon's motion. "Once the district court had filed a pretrial scheduling order pursuant to [Rule 16] . . . that rule's standard control[s]." *Johnson v.*

*Mammoth Recreations, Inc.*, 975 F.2d 604, 607–08 (1992). This standard applies to all pleadings, including the addition of counterclaims and affirmative defenses. *See Seattle Pac. Indus., Inc. v. S3 Holding LLC*, 831 F. App'x 814, 816 (9th Cir. 2020) (unpublished). Ronan argues Rule 16 applies because the district court already issued scheduling orders. Verizon, on the other hand, insists these orders do not apply to non-intraMTA issues, which are precisely what its new defenses and counterclaim address. Ronan has the better argument.

First, the multi-district litigation court issued multiple scheduling orders with amendment deadlines that have long since passed. (*See* Docs. 18-2, 19-1.) While Scheduling Order No. 2 explicitly states that it does not apply to "non-intraMTA claims," (Doc. 201 at 4), there is no such language in Scheduling Order No. 3, (*see* Doc. 11 at 1). Thus, not all the scheduling orders are as narrow as Verizon argues. Second, Verizon "participated behind the scenes" on this issue. *SAGE Electrochromics, Inc. v. View, Inc.*, 2014 WL 1998049, *4 (N.D. Cal. May 15, 2014). As Ronan notes and Verizon does not dispute: (1) Verizon was on notice about the billing dispute in June 2016, "when it began withholding payments"; (2) on February 20, 2017, "Verizon sent a certified letter to [Ronan], describing the [billing] issue and alleged amounts overpaid"; and (3) in April 2017, the parties commenced negotiations on the billing issue. (Doc. 18 at 9.) While Verizon did not pursue litigation on the billing issue until after the scheduling

5

order deadlines, its preliminary work still triggers the good cause requirement of Rule 16.

Finally, Verizon posits that Rule 16 should not apply because its proposed amendments would not alter the contents of the scheduling orders. In doing so, Verizon ignores the fact that the mere existence of a scheduling order requires the application of the Rule 16 standard, regardless of the substantive issues addressed. Verizon cites two district court opinions in support of its argument, both of which denied leave and articulated concerns about adjustments to the scheduling orders. *See Ksanka Kupaqa Xa'lcin v. U.S. Fish & Wildlife Serv.*, 2020 WL 5659049 (D. Mont. Sept. 23, 2020); *W. Sec. Bank v. Schneider Ltd. P'ship*, 2016 WL 3190170 (D. Mont. June 7, 2016). But in neither case was the applicability of Rule 16 in doubt. In fact, in *Ksanka Kupaqa Xa'lcin*, the sentence following the language quoted by Verizon reads "[t]he *existence* of this court-ordered schedule means that Rule 16(b)(4). . . . governs Plaintiffs' motion." 2020 WL 5659049, at *1 (emphasis added). Verizon inaccurately claims this Court in *Western Security Bank* "den[ied] leave under Rule 16 because '[n]ew deadlines for expert disclosures, discovery, and motions would need to be set.'" (Doc. 19 at 12.) Not so. In fact, the Court in *Western Security Bank* denied leave under Rule 16 because the party had not been diligent, while adding that new deadlines for expert disclosure, discovery, and motions would *also* undermine Rule 1's expedience

6

requirement. *W. Sec. Bank*, 2016 WL 3190170, at *4. The result is that Rule 16 applies here.

### B. Good Cause

Because Rule 16 controls, Verizon must show good cause to alter the scheduling order. The central focus of a good cause inquiry under Rule 16 is whether the moving party acted with "diligence." *Johnson*, 975 F.2d at 609. To demonstrate diligence, a party must show:

> (1) that [it] was diligent in assisting the Court in creating a workable Rule 16 order . . . . ; (2) that [its] noncompliance with a Rule 16 deadline occurred or will occur, notwithstanding [its] diligent efforts to comply, because of the development of matters which could not have been reasonably foreseen or anticipated at the time of the Rule 16 scheduling conference . . . .; and (3) that [it] was diligent in seeking amendment of the Rule 16 order, once it became apparent it could not comply with the order . . . .

*Richland Partners, LLC v. Cowry Enters., Ltd.*, 2014 WL 4954475, at *3 (D. Mont. Sept. 29, 2014) (internal quotation marks omitted); *see also Lindsay*, 2015 WL 1246939, at *5*; and W. Sec. Bank*, 2016 WL 3190170, at *4.

### 1. Workable Rule 16 Order

Verizon asserts that it "was diligent in creating a workable Rule 16 order." (Doc. 19 at 13.) There are no facts indicating otherwise, and the matter is not disputed by Ronan. Verizon satisfies this prong of the diligence test.

### 2. Unforeseen and Unreasonable Developments

7

Ronan claims that Verizon was not diligent because it was "fully aware of the [monthly billing] issue at least since June 2016, when it began withholding payments to [Ronan]," which means Verizon had enough time to amend its answer before the October 28, 2016 deadline.  (Doc. 18 at 8–9.)  Additionally, Ronan points to both a February 20, 2017 letter from Verizon "describing the [billing] issues and alleged amounts overpaid," as well as April 2017 negotiations between parties on this issue, to argue that proposed amendments "at this very late date" cannot be justified under the "good cause" standard.  (*Id.*)

Verizon counters that amendment is justified given the "unusual posture of the case."  (Doc. 19 at 13.)  When the multi-district litigation court issued its scheduling order, Verizon alleged that it "could not have foreseen Ronan's desire to continue to litigate the case" given that Verizon had "*fully paid*" the amount at issue in the intraMTA controversy.  (*Id.* at 14).  When Ronan alleged Verizon owed additional money, the parties requested a remand to this Court.  After Ronan failed to amend its Complaint to clarify the issue, "Verizon filed for leave to amend shortly thereafter."  (*Id.* at 14.)

The caselaw supports Verizon.  In *Lindsay*, a products liability case, the defendant was permitted to amend its answer to include an additional defense because it was not aware that the plaintiff may have improperly assembled the product until after receiving the plaintiff's expert's report and engaging in

8

mediation; that is, the plaintiff "prompted [the defendant] to reevaluate its position and move for leave to amend." 2015 WL 1246939, at *6. Similarly, in *Butler*, the plaintiff was allowed to amend a complaint to add a class claim for breach of contract because it was only through discovery that it was made aware of practices that "appl[ied] to all policyholders with policies like [the plaintiff's]." 2018 WL 10811782, at *3.

By contrast, Ronan argues that "a failure to plead a claim or defense when all facts giving rise to it were known to the party amounts to lack of diligence and no good cause to amend." (Doc. 18 at 7–8.) Ronan's argument relies heavily on *In re Western States Wholesale Natural Gas Antitrust Litigation*, 715 F.3d 716 (9th Cir. 2013). However, in that case, the Ninth Circuit upheld a district court's denial of a motion to amend because the moving party was "aware of the facts *and theories* supporting amendment since the inception of the action." *Id.* at 737 (emphasis added). Unlike the parties in *Wholesale Natural Gas*, Verizon was made aware of additional theories to support the amendments it proposed in this motion after the time to amend had passed. The issues raised after remand place Verizon in a position comparable to the moving parties in *Lindsay* and *Butler* rather than *Wholesale Natural Gas*. That is, Verizon was "prompted… to reevaluate its position." *Butler*, 2015 WL 10811782, at *6. This factor therefore also weighs in favor of Verizon.

### 3. Diligence in Seeking Amendment

In cases where unforeseen and unanticipated developments result in noncompliance with a Rule 16 deadline, the moving party must be diligent in seeking amendment in the aftermath of those developments. "[A] short time frame between learning of new facts and filing motion to amend is sufficient for the purposes of establishing diligence." *Bodine v. salesforce.com, Inc.*, 2019 WL 9465819, *3 (D. Mont. Nov. 26, 2019). Verizon promptly sought amendment in response to facts and theories raised after remand. In fact, it delayed its motion because Ronan had indicated it was going to amend its Complaint to clarify the remaining issues. Only after Ronan failed to amend its complaint did Verizon move to add the defenses and counterclaim. Ronan's argument against diligence is based on the extended period of time between the scheduling order deadline and Verizon's motion, but that contention does not consider the intervening developments to which Verizon was responding. Verizon has satisfied the third and final prong of this test. It has established good cause to amend the schedule—and therefore its pleading—under Rule 16.

## II. Rule 15

A party seeking to amend a pleading must also satisfy the requirements of Rule 15. A district court's ability to grant leave "when justice so requires" under Rule 15 is generally recognized as a "very liberal" standard. *AmerisourceBergen*

*Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 951 (9th Cir. 2006).  A court should only deny the motion if the amendment: "(1) prejudices the opposing party; (2) is sought in bad faith; (3) produces an undue delay in litigation; or (4) is futile." *Id.* "It is the consideration of prejudice to the opposing party that carries the greatest weight." *Eminence Cap., LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The non-moving party has the burden of demonstrating why leave should be denied.  *Senza-Gel Corp. v. Seiffhart*, 803 F.2d 661, 666 (Fed. Cir. 1986).

    A.    **Prejudice**

Ronan insists that amendments to pleadings are prejudicial if a theory is being added that was "known to the party seeking amendment since the inception of the cause of action."  (Doc. 18 at 14 (citing *Royal Ins. Co. of Am. v. Sw. Marine*, 194 F.3d 1009, 1016–17 (9th Cir. 1999) and *Bodine* at *10-11).)  But the cases on which Ronan relies are inapposite.  The Ninth Circuit opinion directly quoted the rule from an earlier case, which involved a tactical motive.  *Royal*, 194 F.3d at 1016–17 (*quoting Acri v. Int'l Ass'n of Machinists & Aerospace Workers,* 781 F.2d 1393, 1398 (9th Cir.1986)).  In *Acri*, the motion to amend was denied because adding a new theory was a "tactical choice" undertaken to "avoid the possibility of an adverse summary judgment ruling."  781 F.2d at 1398–99.  Similarly, the moving party in *Royal Insurance* was seeking to amend its pleading for the third time after it lost at the summary judgment phase of litigation. 194 F.3d at 1017.

11

Unlike the moving parties in *Acri* and *Royal Insurance*, Verizon's amendment does not amount to a tactical ploy to salvage its case during the waning stages of the proceedings. And, contrary to Ronan's argument, Verizon's position is similar to the amending party's position in *Bodine*. In that case, the Court explained that "late amendments to assert new theories" could be prejudicial under certain circumstances; but the motion for leave to amend was granted in *Bodine* because it was not "at the late stage of litigation" (i.e., "the discovery deadline ha[d] not passed, no dispositive motions ha[d] been filed, and depositions ha[d] only recently been taken"). 2019 WL 9465819, at *4. Verizon aptly notes that "no activity has occurred before this Court," including discovery, expert disclosure, and dispositive motions. (Doc. 19 at 3.) And even if the amendment requires additional discovery, that is insufficient "to overcome Rule 15's liberal policy of allowing amendments." *Bodine*, 2019 WL 9465819, at *4. Therefore, Verizon's proposed amendment is not prejudicial to Ronan.

    B.    **Bad Faith**

Ronan's argument that Verizon's proposed amendment would be in bad faith is based solely on the notion that "Verizon was fully aware of the new defenses and claims" early in the litigation. (Doc. 18 at 13.) First, the above analysis demonstrates Verizon's new theories result from unforeseen and unanticipated developments, long after the initial stages of the multi-district

litigation. Second, no case supports Ronan's claim that being aware of new defenses or claims at an earlier stage amounts to bad faith. In *Bodine*, the party opposed to the motion never raised a bad faith argument. 2019 WL 9465819, at *4. And in *Ascon Properties, Inc. v. Mobil Oil Co.*, the court affirmed the denial of a motion to amend because it was plaintiff's third attempt at amending its complaint in which it sought to reassert claims that were alleged and rejected in the original pleading. 866 F.2d 1149, 1161 (9th Cir. 1989). Courts typically reserve arguments for "bad faith" motions to cases of obvious gamesmanship. *See, e.g., Trans Video Elecs., Ltd. v. Sony Elecs., Inc.*, 278 F.R.D. 505, 510 (N.D. Cal. 2011), aff'd, 475 F. App'x 334 (Fed. Cir. 2012) (plaintiff's "belated motion to amend was made in bad faith, only as a last-ditch attempt to avoid the summary judgment"). Here, Verizon reassessed its position in the wake of the resolution of the intraMTA issues, the Montana Public Services Commission ruling, and remand to this Court. The defenses and counterclaims contained in the amendment were unavailable to Verizon during the multi-district litigation phase. The record does not demonstrate bad faith.

**C.    Undue Delay**

Ronan also suggests that because it has been five years since the Rule 16 deadline passed, "[t]his factor weighs heavily against allowing Verizon to file new pleadings." (Doc. 18 at 16.) Once again, this argument fails to consider new issues

that arose from unforeseen and unanticipated developments and the fact that Verizon could not have asserted these defenses and counterclaim in its initial Answer.  Ronan further argues Verizon's amendment is unduly delayed based on a Ninth Circuit decision upholding the denial of a motion made after the court granted summary judgment to "add a new theory of liability of which [p]laintiffs have been aware since the inception of th[e] suit." (Doc. 18 at 15–16 (citing *Wholesale Nat. Gas*, 715 F.3d at 738).)  However, the district court in *Wholesale Natural Gas* assigned considerable weight to the fact that the moving party had previously amended the complaint but failed to add new facts and theories until its third attempt to amend the pleadings.  Ronan's arguments for undue delay fail for the same reasons as its arguments regarding diligence.

## D.    Futility

Ronan next challenges Verizon's addition of the recoupment defense as futile because Verizon supposedly waived the argument by voluntarily making payments at the disputed rate over the course of several years.  But Ronan cites cases articulating this rule as it pertains to royalty fees in a franchise agreement; a different standard applies to agreements bound by telecommunication tariffs.  The "filled-rate-doctrine" or "filled-tariff doctrine" governs disputes arising under tariffs imposed by the FCC; under this doctrine, the rights and liabilities of parties are fixed upon the filing of tariffs—it cannot change as a result of payment and

14

performance. *Evanns v. AT&T Corp.*, 229 F.3d 837, 840 (9th Cir. 2000). Even if Verizon paid Ronan in accordance with disputed billing practices over several years, the filled-tariff doctrine precludes Verizon from waiving its rights imposed by the FCC at the outset of its agreement with Ronan.

Ronan further alleges that Verizon's recoupment defense is barred because the intra-MTA claim and disputed billing claim did not arise from the same transaction. Ronan begs the question by assuming there are different transactions simply because Verizon's counterclaim would "involve completely new issues and facts, and prolong and complicate this action." (Doc. 18 at 20.) Verizon offers a pithy but appropriate response: "both charges arise under the same tariff and its related invoices." (Doc. 19 at 8.) Ronan simply fails to elaborate on why these disputes involve different transactions. Thus, amendment is not futile.

## Conclusion

Because Verizon has met the standards under both Rule 16 and Rule 15, IT IS ORDERED that Verizon's motion to amend (Doc. 16) is GRANTED. Verizon must file its amended pleading on or before **December 15, 2021**.

IT IS FURTHER ORDERED that on or before **January 3, 2022**, the parties shall jointly file a modified joint discovery/trial plan, to include:

    (a)    an estimate of how much time is reasonably required for discovery;

    (b)    a list of the likely areas of expert testimony, if any;

(b)   an indication of what, if any, motions are likely;

(c)   an estimate of the length of trial; and

(d)   a summary of the MDL litigation, including a list of the issues that have been resolved and those that remain for resolution in this Court.

A scheduling order will be subsequently issued based on the information provided.

DATED this 10th day of December, 2021.

_____
Donald W. Molloy, District Judge
United States District Court